IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRENT ROE,<br><br>                            Plaintiff,<br><br>vs.<br><br>KENNETH TUBBS, SCOTT CROWTHER, and JOHN DOES 1-10,<br><br>                           Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:15-CV-588-JNP<br><br>Judge Jill N. Parrish |

Before the court is the defendants' motion for summary judgment. [Docket 30]. The court GRANTS the motion.

## BACKGROUND

Plaintiff Brent Roe is a prisoner at the Utah State Prison. On June 22, 2013, Roe's cellmate[1] set his mattress on fire. Roe alleges that prison guards were slow to respond to the fire. He also alleges that smoke from the fire damaged his lungs leading to a persistent cough that continued until two years after the fire.

Sometime around early April 2015, Roe submitted a Level I Grievance to prison officials. In it, Roe complained that his lungs had been damaged by fumes from the 2013 fire and that Doctor Kenneth Tubbs had refused to prescribe respiratory therapy. Prison officials denied and returned the Level I Grievance, stating that Roe had failed to file his Grievance within seven

---

[1] In his complaint, Roe alleges that it was his cellmate that set the fire. At other stages in the prison grievance process, he appears to suggest that it was a prisoner in a neighboring cell that set the fire.

working days of the 2013 fire as required by the prison's grievance procedure. Roe then submitted a Level II Grievance which provided more detail to his claim that the 2013 fire damaged his lungs and that Dr. Tubbs had refused to give him respiratory therapy. Prison officials again denied the grievance, asserting that there was no record of receiving a Level I Grievance on the subject of a long-term cough. Roe finally submitted a Level III Grievance in which he argued that he had consistently raised the issue of his persistent cough throughout the grievance process. On May 8, 2015, Prison officials denied the Level III Grievance, arguing that it was "too late to grieve any alleged lung damage due to the fire . . . set in 2013" and that Roe was "seen by Dr. Tubbs on May 6, 2015, and there was no evidence of a cough . . . or asthma."

In August 2015, Roe filed a civil complaint against Dr. Tubbs and Scott Crowther, the warden of the Utah State Prison. The complaint alleged that he had been subjected to cruel and unusual punishment in violation of his Eighth Amendment rights under three distinct theories. First, Roe alleged that the prison guards' slow response to the fire subjected him to severe smoke inhalation. Second, he alleged that Dr. Tubbs refused requests for treatment of his persistent cough. And Third, Roe alleged that Dr. Tubbs refused treatment for a hernia he had developed in March 2015.

The defendants filed a motion for summary judgment, arguing that they should prevail as a matter of law for two reasons: (1) Roe failed to exhaust his administrative remedies and (2) Dr. Tubbs and Crowther did not violate Roe's Eighth Amendment rights.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citation omitted). On a motion for summary judgment, the court "consider[s] the evidence in the light most favorable to the non-moving party." *Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013) (citation omitted). However, "[w]hen the moving party has carried its burden under rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (alterations in original) (citation omitted).

## ANALYSIS

### I. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act (PLRA) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "Exhaustion is [not] left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *accord Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003) ("The statutory exhaustion

3

requirement of § 1997e(a) is mandatory, and [district courts are] not authorized to dispense with it.").

The Supreme Court has held that the exhaustion requirement may not be satisfied by filing an untimely or otherwise procedurally infirm grievance because the PLRA requires "proper exhaustion." *Woodford*, 548 U.S. at 90. Proper exhaustion "'means using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).' . . . [and] demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90–91 (citation omitted).

Under this statutory exhaustion requirement, Roe failed to exhaust his administrative remedies for his claim that Dr. Tubbs refused to treat his hernia. None of the grievances he filed with prison officials mentioned a hernia. Nor did he ever claim that he did not receive proper medical care for this alleged condition. Because Roe failed to address this claim through the Utah State Prison grievance process, this court may not grant any relief based upon his assertion that Dr. Tubbs neglected to treat his hernia.

Furthermore, Roe did not exhaust his administrative remedies for his claim that the prison guards neglected to respond in a timely manner to the 2013 fire. Although he mentioned the fire in his grievance papers and asserts that his persistent cough was caused by it, he never alleged that prison officials were at fault for failing to control the fire. He claimed for the first time that that the response was slow in his complaint filed with this court. Moreover, even if Roe had blamed prison officials for failing to promptly respond to the fire, his grievance would have been late. The Utah Department of Corrections Grievance Policy requires inmates to submit a Level I

Grievance "[w]ithin seven working days of an incident or seven working days from the time the inmate knew or should have known about a grievance incident." Because Roe filed his initial grievance almost two years after the fire, and because Roe was necessarily aware of any slow response at the time of the fire, his 2015 grievance was untimely.

Roe did, however, submit a timely Level I Grievance for his claim that Dr. Tubbs refused to treat his persistent cough. Regardless of whether Roe complained in a timely manner to the fire or whether the fire in fact caused the persistent cough, prison officials had an ongoing constitutional duty to avoid "deliberate indifference to serious medical needs." *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1864 (2017) (citation omitted). Because there is no evidence that Roe submitted his Level I Grievance more than seven working days from the date of the alleged refusal of treatment, he properly exhausted his administrative remedies for this claim.

The defendants nonetheless argue that Roe failed to exhaust his administrative remedies because the Inmate Grievance Coordinator for the Utah State Prison avers that he does not have copies of the grievance documents that Roe provided to the court with his complaint. But it appears that Utah State Prison does not have the grievance documents because an official, believing the grievance to be untimely, returned them to Roe without retaining any copies. Roe satisfied the Grievance Policy by submitting the grievance forms to the appropriate officials. Prison officials cannot block Roe from exhausting his administrative remedies by simply neglecting to retain copies of the forms submitted to them.

## II.  ROE'S EIGHTH AMENDMENT CLAIM

Because Roe properly exhausted the administrative process available to address his claim that Dr. Tubbs did not adequately treat his persistent cough, the court turns to the defendants'

5

argument that they did not violate Roe's Eighth Amendment right to medical care. In examining this argument, the court first looks to the undisputed facts regarding Dr. Tubbs's treatment of Roe.[2]

Dr. Tubbs first saw Roe on July 23, 2013—about a month after the fire—to address issues caused by his failure to take medication for his kidney problems. Roe did not mention any problems with his breathing during that visit. On August 26, 2013, Roe submitted a healthcare request for a chronic cough caused by smoke inhalation. He was seen by a nurse the next day, but Roe cancelled a scheduled appointment with Dr. Tubbs to address this issue.

During an April 1, 2014 examination with Dr. Tubbs, Roe complained of a cough. Upon examination, Dr. Tubbs determined that there was no shortness of breath, no cough, and no concern for pulmonary issues at that time. At a September 15, 2014 examination, Roe again complained of a cough. Although the Roe's physical exam was normal, Dr. Tubbs ordered a

---

[2] The defendants produced Roe's medical records and Dr. Tubbs's affidavit in support of their motion for summary judgment. Roe has not presented any evidence to support his response to the motion or otherwise dispute the evidence presented by the defendants. The court, therefore, views the evidence in the light most favorable to Roe and takes the facts established by the evidence as undisputed. *See Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings, and the court looks to the evidence before it (in the light most favorable to the plaintiff) . . . ." (citation omitted)); FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."); *see also Witmer v. Powell*, 114 F. App'x 372, 374 (10th Cir. 2004) (unpublished) (granting summary judgment on an Eighth Amendment claim where the prisoner "failed to present any evidence upon which he can dispute defendants' evidence and thus create a genuine issue of material fact that would preclude summary judgment").

chest x-ray, which was also normal. Dr. Tubbs prescribed cough drops and cold medication for a sore throat and congestion.

In April 2015, Dr. Tubbs saw Roe again regarding a cough. Roe had congestion and shortness of breath. Dr. Tubbs ordered an x-ray, which came back normal. Dr. Tubbs prescribed Roe an inhaler for 90 days.

The question presented by the motion for summary judgment is whether these facts could lead a jury to find for Roe on his Eight Amendment claim. In order to prevail on this claim, Roe must prove that one or both of the defendants exhibited "deliberate indifference to serious medical needs." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1864 (2017) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)); *accord West v. Atkins*, 487 U.S. 42, 48 (1988) ("[D]eliberate indifference to a prisoner's serious medical needs, whether by a prison doctor or a prison guard, is prohibited by the Eighth Amendment."). Under this standard, "an inadvertent failure to provide adequate medical care" is not sufficient to prove a claim. *Estelle*, 429 U.S. at 105. "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id*. at 106.

The Supreme Court has clarified that when prison officials provide treatment for a medical condition, allegations that "more should have been done by way of diagnosis and treatment" or that "a number of options . . . were not pursued" are insufficient to support an Eighth Amendment claim. *Id.* at 107. For example, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Id.*; *accord Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir.

1992) ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating physician, as well as his contention that he was denied treatment by a specialist is, as the district court correctly recognized, insufficient to establish a constitutional violation."). Thus, "when a prisoner does in fact receive medical care, he has no Eighth Amendment claim based merely on his disagreement with the nature of the diagnosis." *Alloway v. Wackenhut Corr. Facility*, 15 F. App'x 743, 744 (10th Cir. 2001) (unpublished). Summary judgment is appropriate where the evidence shows, at most, a failure to provide the proper amount of medical care. *See McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001) (affirming summary judgment on a claim that prison doctor failed to provide proper medical care); *Witmer v. Powell*, 114 F. App'x 372, 374–75 (10th Cir. 2004) (unpublished) (affirming summary judgment where a prisoner merely disagreed with a doctor's medical opinions about the treatment of a medical condition).

In this case, Dr. Tubbs provided medical care for Roe's persistent cough. Dr. Tubbs examined Roe on three separate occasions for the condition and ordered two sets of x-rays to help in his diagnosis. He also prescribed cough medicine and an inhaler for the condition. Although it is unclear what more Roe believes Dr. Tubbs should have done, his basic complaint is that Dr. Tubbs did not do enough to address his medical condition. But, as the Supreme Court has noted, assertions that "more should have been done by way of diagnosis and treatment" or that other remedies should have been pursued are inadequate to support an Eighth Amendment claim as a matter of law. *See Estelle*, 429 U.S. at 107. Even if the evidence could conceivably show that Dr. Tubbs had been negligent in treating Roe's complaints of a persistent cough, that would not be enough to establish a constitutional violation. *See id.* at 106. Therefore, the

undisputed evidence in this case demonstrates that the defendants were not deliberately indifferent to serious medical needs in violation of the Eight Amendment.

## CONCLUSION

The court concludes that the defendants are entitled to summary judgment on Roe's Eighth Amendment claim. Accordingly, the court GRANTS the defendant's motion for summary judgment. [Docket 30].

DATED March 19, 2018.

BY THE COURT:

_____
JUDGE JILL N. PARRISH
United States District Court